NOT FOR PUBLICATION                                    (Docket Nos. 86, 95)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                        :
WILSON GALVAN MONTALVO                   :
and CESAR GALVAN MONTALVO,               :
                                        :
              Plaintiffs,                :     Civil No. 06-2704 (RBK/AMD)
                                        :
       v.                                :     **OPINION**
                                        :
LARCHMONT FARMS, INC.                    :
and CHARLES WILLIAM HAINES, III,         :
                                        :
              Defendants.                :
_____:

**KUGLER**, United States District Judge:

       This dispute arises out of the employment of seasonal farm workers, Plaintiffs Wilson

Galvan Montalvo and Cesar Galvan Montalvo, at Larchmont Farms in 2004.  Plaintiffs allege

that Larchmont Farms, Inc. and Charles William Haines, the owner and operator, violated New

Jersey common law, the Migrant and Seasonal Migrant Agricultural Worker Protection Act

(AWPA), 29 U.S.C. § 1811 et seq., the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et

seq., and the New Jersey Law Against Discrimination (LAD), N.J.S.A. § 10.5-1 et seq.  Presently

before the Court is Defendant Haines's Motion for Summary Judgment (Docket No. 86) and

Plaintiffs' Cross Motion for Summary Judgment (Docket No. 95).  For the reasons discussed

below, Defendant Haines's Motion is denied and Plaintiffs' Motion is granted in part and denied

in part.

## I.  BACKGROUND

Defendant Haines is president and owner of Larchmont Farms, Inc., which operates farms in and around Salem and Cumberland Counties in New Jersey.  Larchmont Farms is in the business of growing peaches, nectarines, and apples.

Plaintiffs, both U.S. citizens and residents of Puerto Rico, were recruited by Antonio Cardona, an employee of Larchmont Farms, to travel from Puerto Rico to New Jersey to work for Larchmont Farms in the 2004 season.  Plaintiffs paid for their own transportation from their hometown to the airport in San Juan, Puerto Rico, but were not reimbursed by Defendants for that travel.  Defendants provided Plaintiffs with airline tickets to fly from Puerto Rico to New Jersey.  Upon arrival in New Jersey, Larchmont Farms provided Plaintiffs housing, first at "campo nuevo," then at "campo viejo."  Plaintiffs aver that they were moved to "campo viejo" when H2A workers, foreign nationals having a visa which allows them to be in the U.S. for temporary or seasonal agricultural work, arrived and were housed at "campo nuevo."  Defendants paid Plaintiffs $5.15 per hour for their labors, the then minimum wage.  Defendants offered the H2A workers $8.52 per hour.

On July 7, 2004, Plaintiff Wilson Galvan Montalvo became very ill after alleged exposure to pesticides while working at Larchmont Farms.

Plaintiffs contend that they were not paid for the final pay period for which they worked for Larchmont Farms.

On the basis of these facts, Plaintiffs brought a four count complaint on June 15, 2006.  In the first count, Plaintiffs assert an intentional tort arising out of the alleged intentional exposure to pesticides by the Defendants.  Compl. at ¶¶ 42-44.  In the second count, Plaintiffs assert claims

under the AWPA for failing to provide written disclosures, providing false and misleading

information, failing to pay wages when due, violating the terms of the working arrangement, and

failing to provide proper housing.  Compl. at ¶¶ 45-55.  In the third count, Plaintiffs assert a

violation of the FLSA for failure to pay minimum wage.  Compl. at ¶¶ 56-59.  Finally, in the

fourth count, Plaintiffs allege a violation of the LAD for offering different terms and conditions

of employment to nonimmigrant alien workers.  Compl. at ¶¶ 60-62.  Defendant and Plaintiffs

both filed motions for summary judgment.

## II.    STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of the evidence; instead, the non-moving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at

255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of

demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture

Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either

by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by

"'showing' – that is, pointing out to the district court – that there is an absence of evidence to

3

support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the

moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific

facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not

so respond, summary judgment should, if appropriate, be entered against that party."  <u>Id.</u>

## III.   DISCUSSION

Currently before the Court are two opposing motions for summary judgment.  Because

both parties' motions involve multiple grounds for relief, a brief summary of those grounds is

appropriate at the outset.  Defendant Haines seeks summary judgment for the following reasons:

1) he is not liable for any of the claims in his individual capacity;

2) Plaintiffs were undisputedly paid minimum wage for purposes of the FLSA;

3) he did not violate the LAD because all workers at Larchmont Farms were
treated equally;

4) he did not violate the AWPA because

a) Plaintiffs were undisputedly paid all wages due,

b) Plaintiffs were provided with adequate housing,

c) Plaintiffs were provided adequate terms of work,

d) and no improper information or disclosures regarding the employment
were made;

5) Plaintiff Cesar Galvan Montalvo suffered no damages from the alleged
intentional tort; and

6) Plaintiffs cannot state an intentional tort claim because no evidence exists to
show that Defendant intentionally exposed Plaintiffs to any pesticides.

Def. br. at 13-20.

Plaintiffs dispute Defendant's assertions and also seek summary judgment in their favor

4

on the following grounds:

> 1) Defendant is liable under the AWPA and the FLSA for any violation that Defendant Larchmont Farms is liable for;
>
> 2) Defendant is liable for unpaid wages in violation of the FLSA;
>
> 3) Defendant is liable for violation of the AWPA for
>
> > a) failing to provide written disclosures,
> >
> > b) failing to pay wages when due,
> >
> > c) failing to provide code-compliant housing, and
> >
> > d) failing to provide certified housing.

Pl. br. at 15-44.  The Court now turns to a review of each of the above grounds for summary judgment.

### A.    Individual Liability

Defendant asserts that he is entitled to summary judgment as to all counts because he is not individually liable under either state or federal law.  Def. br. at 13.  His argument in effect is that Plaintiffs' claims are against him in his professional capacity as president of Larchmont Farms, and not against him in his personal capacity as an individual tortfeasor; therefore, he is only liable to the extent he acted outside of his scope of employment.  See Def. br. at 13.  Defendant also asserts that he cannot be individually liable under the AWPA or the LAD because the record does not contain evidence of his own intentional conduct.  Def. reply br. at 7.  Plaintiffs argue that both state and federal law provide for individual liability regardless of whether the defendant was acting within his scope of employment.  Pl. br. at 11-17.  Moreover, Plaintiffs assert that the uncontested evidence in this case is such that Defendant can be held

liable as a matter of law for all violations of the AWPA or the FLSA attributable to Larchmont Farms.  Pl. br. at 15-18.

The Court agrees with Plaintiffs and finds that Defendant can be held personally liable for each of the alleged claims.  The Court denies Defendant's Motion and grants Plaintiff's Motion.[1]

### 1.    New Jersey Tort Law

Under New Jersey common law, an individual is liable for the torts he personally commits, regardless of whether he was acting within his scope of employment.  Ballinger v. Delaware River Port Auth., 800 A.2d 97, 110 (N.J. 2002); Sunset Fin. Res., Inc. v. Redev. Group V, LLC, Nos. 05-2914, 05-2915, 2006 WL 3675384, at *4 (D.N.J. Dec. 12, 2006) ("New Jersey law is clear that an individual who personally participates in a tort may be held individually liable for that tortious conduct even if that individual does so on behalf of his employer."); see also Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 272 (N.J. 2002) (holding corporate officers liable under "participation theory" where personally take part in tortious conduct by corporation).  The scope of employment inquiry is only relevant in determining whether the employer may be vicariously liable.  Ballinger, 800 A.2d at 110.

In this case where Plaintiffs have alleged tortious conduct by Defendant individually, he may as a matter of law be held personally liable.  Therefore, Defendant's Motion is denied.

### 2.    LAD

Defendant may also as a matter of law be personally liable under the LAD.  Under the LAD, "employers" are prohibited from engaging in unlawful discrimination, including

---

[1] As an aside, the following discussion only addresses whether Defendant may be personally liable under state and federal law as a matter of law.  The sufficiency of the respective claims and whether they are ripe for summary judgment is discussed below in sections III.B-III.F.

discrimination on the basis of race or national origin.  N.J.S.A. § 10:5-12(a).  An employer is

defined as "one or more individuals, partnerships, associations, organizations, labor

organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers and

fiduciaries."  N.J.S.A. § 10:5-5(a), (e).  An employer is clearly liable for a violation of the LAD.

N.J.S.A. § 10:5-12(a).  However, the LAD also provides liability for a "person," whether that

person is an employer or not, who aids or abets, incites, compels or coerces a violation of the

LAD.  N.J.S.A. § 10:5-12(e).  This provision means that supervisors who are not employers

under the LAD may be held individually liable if they aid or abet a principal who violates the

LAD.  Santiago v. City of Vineland, 107 F. Supp. 2d 512, 543-44 (D.N.J. 2000).

Whether or not Defendant is an employer or a supervisor, he can be held personally liable

for his alleged acts.  As Plaintiffs' employer, he is liable for any direct acts of discrimination he

took, see N.J.S.A. § 10:5-12(a); as the Plaintiffs' supervisor, he is liable for any aid he supplied

to Larchmont Farms (a "person" under the LAD) in violating Plaintiffs' rights.  See N.J.S.A. §

10:5-12(e).  Therefore, Defendant's Motion is denied.[2]

### 3.    FLSA & AWPA

Defendant may also as a matter of law be held personally liable under the FLSA and the

AWPA.  Under the FLSA, an "employer" is required to pay employees engaged in commerce at

least minimum wage.  29 U.S.C. § 206(a).  An employer is someone "who acts in the interest of

an employer in relation to an employee." 29 U.S.C. § 203(d).  An "employee" is in turn defined

as someone "employed by an employer."  § 203(e)(1).  "Employ" is defined as "to suffer or

---

[2] Defendants' argument regarding lack of intentional conduct evidence, Def. reply br. at
7, is addressed below.  See infra III.C; III.D.

permit to work." § 203(g).  Notably the terms employ, employee, and employer under the FLSA
are defined in the same manner under the AWPA.  29 U.S.C. § 1802(5); 29 C.F.R § 500.20(h).
Thus, to the extent a person is an employer under the FLSA, the person is also an employer under
the AWPA (provided the employment involves the requisite agricultural operations).[3]  See
Barrientos v. Taylor, 917 F. Supp. 375, 380 (E.D.N.C. 1996); Avalos v. La Conca D'Oro, Inc.,
No. 87-4980, 1987 WL 19894, at *3 (E.D. Pa. Nov. 16, 1987).

    A person who dominates the acts of a corporation or who has the power to act on behalf
of a corporation "'vis-a-vis its employees,'" is an employer under the FLSA.  See Reich v. PTC
Career Ins. of Pa., Inc., No. 94-647, 1994 WL 283681, at *1 (E.D. Pa. June 24, 1994) (quoting
Donovan v. Sabine Irrigation Co., Inc., 695 F.2d 190, 194-95 (5th Cir. 1983)); Dole v. Solid
Waste Servs., Inc., 733 F. Supp. 895, 923 (E.D. Pa. 1989) (quoting same), aff'd, 897 F.2d 524
(3d Cir. 1990).  In other words, a person who has operational control of a corporation is subject
to personal liability for the corporation's violations of the FLSA.  See Donovan, 695 F.2d at 194-
95.  A person acting directly or indirectly on behalf of a corporation is also liable under the
AWPA.  See Avalos, 1987 WL 19894, at *3.

    Under these standards, Defendant in his role as president and owner of Larchmont Farms,
Inc. may be personally liable as a matter of law for Larchmont's violations of the FLSA or the
AWPA.  Therefore, Defendant's Motion is denied.

    However, Plaintiffs take this conclusion a step further and assert that they are entitled to a
finding by this Court, on the basis of the law and the undisputed evidence, that Defendant is

---

[3] Whether the underlying dispute involves "agricultural employment," 29 U.S.C. §
1802(3), is not in dispute here.

liable for any violations of the FLSA or the AWPA for which Larchmont Farms is liable.  Pl. br. at 15-18.  To be granted summary judgment on this point, Plaintiffs must show that no genuine issue of material fact exists as to whether Defendant had operational control over Larchmont such that he can be said to be their employer as a matter of law.

The Court finds that Plaintiffs have met their burden of showing an absence of genuine issue of material fact on this point and that Defendant has produced nothing to show a genuine issue.[4]  As pointed out by Plaintiffs, the undisputed record shows that Haines is the president and owner of the Larchmont, Haines Answer at ¶ 3; he prepared the orchards for production, was involved in the overall management of the Farm, thinned and harvested peaches, and supervised Plaintiffs' work at the Farm, Pl. br., Ex. B at ¶¶ 2, 10, 20; he assisted in payroll and the distribution of paychecks on payday, Pl. br., Ex. B at ¶ 2; Def. br., Ex. D at answer 4(a); he was involved in the application of pesticides, Pl. br., Ex. B at ¶ 5; he was involved in the decision to hire H2A workers, Pl. br., Ex. E; Def. reply br. at 2, ¶ 4; and Thomas Dunn, the Farm's vice president, testified that Haines has at least some control over most Farm operations, Pl. br., Ex. R at 156:22-25, 157:1-19.  Under these facts, no genuine issue of material fact exists as to whether Defendant is liable under the FLSA and the AWPA to the same extent as Larchmont Farms: he

---

[4] Under Local Civil Rule 56.1, the movant for summary judgment must provide a statement that sets forth the material facts to which no genuine issue exists.  The opponent is then required to furnish a responsive statement of material facts, noting any disagreement.  L. Civ. R. 56.1(a).  Any material fact not disputed is deemed undisputed for purposes of summary judgment.  Id.

In this case, Plaintiffs supplied the required statement of undisputed material facts.  In his brief in opposition, however, Defendant did not respond to the statement.  Therefore, the Court deems Plaintiffs' well-supported facts as undisputed for purposes of their Motion.  See Handron v. Sebelius, - - - F. Supp. 2d - - - -, 2009 WL 3584342, at *1 (D.N.J. 2009) (holding where movant fails to supply Rule 56.1 statement, court can treat all properly supported facts as uncontroverted).

has undisputed operational control.

Therefore, Plaintiffs' Motion is granted and Defendant is liable under the AWPA and the FLSA for any violation that Defendant Larchmont Farms is liable for.

**B.      FLSA Minimum Wage Violation**

Having determined that Defendant may be personally liable for all of the claims alleged, the Court now turns to whether, notwithstanding this personally liability, Defendant or Plaintiffs are entitled to summary judgment for the purported minimum wage violation under the FLSA.

Plaintiffs' claim under the FLSA is based on upon two separate actions: 1) they were never paid their final paycheck, and 2) they were not reimbursed for travel between their home and the airport in Puerto Rico.  Pl. br. at 36-39.  Defendant argues that the record is "completely devoid" of any evidence to support that Plaintiffs were not paid minimum wage.  Def. br. at 14. He offers that both Plaintiffs individually testified to making at least $5.15 per hour, Def. br. at 14, Plaintiff Wilson Montalvo specifically testified that his attorney told him not to pick up his final check, Def. reply br. at 4, and that the FLSA does not require him to pay for travel to and from the airport.  Def. reply br. at 4.  Plaintiffs counter that summary judgment is appropriate in their favor because the record undisputably shows that they did not receive their final checks and that they paid their own way to the airport in Puerto Rico.  Pl. br. at 36-39.

The Court will deny Defendant's Motion because genuine issues of material fact exist as to whether Plaintiffs were paid their final paycheck.  Further, the Court will grant in part and deny in part Plaintiffs' Motion because genuine issues exist as to whether they received their final paychecks, but no genuine issues exist as to whether Defendant paid their transportation costs.

10

### 1.      Final Paychecks

The FLSA provides that employers must pay employees employed in agriculture the minimum wage rate then in effect. 29 U.S.C. § 206(a)(4). The FLSA further provides that "[a]ny employer who violates the provisions of section 206 . . . of this title shall be liable to the . . . employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, employers are liable for a failure to pay wages when wages are due. Martin v. Selker Bros., Inc., 949 F.2d 1286, 1299 (3d Cir. 1991). During the period involved in this litigation, the minimum wage rate was $5.15 per hour.[5]

Defendant is not entitled to summary judgment on the FLSA claim because genuine issues of material fact exist as to whether he actually paid the Plaintiffs their final checks. Defendant notes that Plaintiff Wilson Galvan Montalvo testified that Wilson's attorney specifically told him not to collect his final paycheck. Def. br. at 4, ¶ 18; Def. br., Ex. A at 154:19-20. Defendant then asserts that he thereafter mailed Plaintiffs their final checks. Def. br. at 5, ¶ 27. However, Plaintiffs note that Plaintiff Wilson sent Luis Cortez to pick up his last check and Haines refused to release it. Pl. br., Ex. A at 159:4. Plaintiffs also dispute that Defendant actually mailed any paychecks. Pl. br., counterstmt. of material facts at ¶ 16. Defendant has offered no proof of mailing. On the basis of these facts, a reasonable jury could determine that Defendant never paid Plaintiffs their final paychecks, and thus they have "unpaid"

---

[5] It is undisputed that Defendant paid each Plaintiff an hourly rate of $5.15. See Def. br. at 4, ¶ 16; Pl. br., counterstmt. of material facts at ¶ 16.

wages under the FLSA.[6]

Therefore, Defendant's Motion is denied as to the FLSA claim for unpaid final wages. Furthermore, because material facts are genuinely in dispute as to whether or not Defendant paid Plaintiffs their final paychecks, summary judgment is likewise inappropriate for Plaintiffs as to their FLSA claim for unpaid final wages.

### 2.    Unpaid Transportation Costs

As to the unpaid transportation costs, however, summary judgment for the Plaintiffs is warranted and Defendant's Motion is denied.

The FLSA does not generally require employers to pay for the transportation costs of their employees.  Brock v. Glassboro Serv. Ass'n, Inc., No. 78-0377, 1987 WL 25334, at *5 (D.N.J. July 23, 1987), aff'd sub nom., McLaughlin v. Glassboro Serv. Ass'n, Inc., 841 F.2d 1119 (3d Cir. 1988).  However, employers may not include in employee wages the cost of transportation or other facilities provided to employees when the facilities are provided "for the benefit or convenience of the employer."  29 C.F.R. § 531.3(d)(1).  Courts interpret this regulation to mean that employers must pay transportation costs for employee travel from the point of their recruitment to the point of actual hire.  See Arriaga v. Florida Pacific Farms, LLC, 305 F.3d 1228, 1242 (11th Cir. 2002); De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc., 338 F. Supp. 2d 649, 662 (E.D.N.C. 2004); Brock, 1987 WL 25334, at *5 (discussing previous summary judgment opinion where held that "the cost of transportation from the point of

---

[6] This conclusion cannot be read to hold that merely because Plaintiffs never cashed their final checks means that they were not paid.  If Defendant did in fact mail their final checks or otherwise make the checks available to them, Plaintiffs' failure to cash those checks cannot create liability.  The Court has not been directed to any authority that holds that a party's own failure to cash a paycheck entitles him to relief under the FLSA.

recruitment to the point of hire (Puerto Rico to New Jersey) was part of the *employer's recruitment cost* and thus could not be considered part of the employee's wage").

In this matter, it is not disputed that Defendant did not pay Plaintiffs their transportation costs between their home in Isabela, Puerto Rico and the San Juan airport.  See Pl. br., stmt. of material facts at ¶ 22; Def. reply br. at 4 (discussing but not refuting transportation claim). Defendant baldly asserts that he was not required to pay Plaintiffs' transportation costs.  Def. reply br. at 4.  However, the above discussed law makes clear that the transportation at issue in this case was for the benefit and convenience of Defendant, and thus was not an expense the Plaintiffs should have borne.

Therefore, Defendant's Motion is denied and Plaintiffs' Motion is granted as to the FLSA claim for unpaid transportation costs.

### C.      LAD

Defendant next asserts that he is entitled to summary judgment on Plaintiffs' discrimination claim under the LAD.  Defendant essentially asserts two grounds in support of the Motion: 1) no evidence exists that the LAD was violated because all workers were treated equally; and 2) even if evidence of discrimination exists, no evidence exists that he intentionally violated the LAD.  See Def. br. at 14; Def. reply br. at 7.  Plaintiffs assert that they have stated a prima facie of discrimination and that Defendant has failed to offer a legitimate non-discriminatory reason for the difference in treatment between Plaintiffs and H2A workers regarding pay and housing.  Pl. br. at 40-44.  Plaintiffs further argue that the LAD does not require evidence of an intentional violation.  Pl. reply br. at 9-10.  The Court agrees with Plaintiffs and denies Defendant's Motion.

### 1.    Unequal Pay

An unequal pay employment discrimination claim based on national origin under the LAD is analyzed under the burden-shifting framework used to evaluate Title VII claims established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Vega v. City of Brunswick, 171 Fed. Appx. 930, 935 (3d Cir. 2006) (holding that although gender discrimination LAD claims of unequal pay are to be judged using the Equal Pay Act  methodology, race-based claims are to be decided using the Title VII approach).  To establish a prima facie case of disparate pay, Plaintiffs must establish that they and employees of other national origins were in similar jobs, but that the other employees were paid more than Plaintiffs because of their national origin.  See Vega, 171 Fed. Appx. at 935-36; Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 909 (N.J. 1990).  If Plaintiffs succeed in establishing a prima facie case, the burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for the unequal pay.  McDonnell Douglas, 411 U.S. at 802; Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 282 (3d Cir. 2001); Grigoletti, 570 A.2d at 910.  If Defendant were to do so, the burden would then shift back to Plaintiffs to demonstrate that Defendant's proffered reasons are pretextual.  McDonnell Douglas, 411 U.S. at 804.

In this case, it is undisputed that Plaintiffs were paid less than the H2A employees, as Plaintiffs were paid $5.15 per hour and the H2A employees were offered $8.52 per hour.  Def. br. at 4, ¶ 16; Def. reply br. at 2, ¶ 4.  To meet the prima facie standard, Plaintiffs must show that the H2A employees were engaged in similar work.  Plaintiffs contend that their jobs were similar to that of the H2A employees.  Pl. br. at 43.  Defendant's response to Plaintiffs' document requests shows that he recruited H2A employees in 2004 to harvest peaches.  Pl. br., Ex. D.  Plaintiff

14

Wilson Galvan Montalvo testified that he was told he would be "picking peaches" at Larchmont Farms, and soon after he arrived at Larchmont Farms, began picking peaches to bring in the harvest.  Pl. br., Ex. A at 67:19.  Viewing the evidence in the light most favorable to Plaintiffs, the work was similar and meets the prima facie standard.  Because employees holding H2A visas (which are only issued to nonimmigrant aliens, 8 C.F.R. § 214.2(h)) were treated differently from Plaintiffs (both American citizens from Puerto Rico), the Court finds that Plaintiffs have met their prima facie burden of showing that the difference in treatment was motivated by discrimination.

Because Plaintiffs have satisfied their prima facie case of discrimination with unequal pay, the burden then shifts to Defendant to articulate a legitimate non-discriminatory reason for the difference.  Defendant has not met that burden.  As far as the Court can discern, Defendant seems to dispute that a difference in pay existed at all.  Indeed, in his reply brief, he suggests that all employees began to earn $8.52 starting July 10, 2004 and that both Plaintiffs had resigned before that date.[7]  Def. reply br. at 6.  Nevertheless, this is an insufficient reason for the difference in pay that Plaintiffs allege existed during their tenure at Larchmont Farms.  This reason simply shows that a disparity was later remedied, but not why it existed in the first place.

Therefore, Defendant's Motion is denied as to the unequal pay claim under the LAD.

### 2.    Unequal Housing

Plaintiffs also aver that the terms and conditions of their employment by Defendant was discriminatory because the conditions of their housing at "campo viejo" were substandard as

---

[7] Notably, Plaintiffs dispute that all employees were offered this rate.  Pl. reply br., reply stmt. of material facts at ¶ 4.

15

compared to the conditions at "campo nuevo," where they were initially housed.  Pl. br. at 43.

Under the McDonnell Douglas framework, Plaintiffs support their prima facie case of

discrimination by alleging that H2A employees did not live in the substandard housing and that

Plaintiffs were put in it to make room for the H2A employees.  Pl. br. at 43.  Specifically, they

assert that the new housing had undrinkable water, old and dirty beds, broken and boarded up

windows, and it lacked cleaning supplies, kitchen utensils, toilet paper, and light bulbs.  Pl. br.,

stmt. of material facts at ¶ 17.  In support of these allegations, Plaintiffs offer answers to

interrogatories, deposition testimony of Plaintiff Cesar Galvan and Edwin Valentin, and the

Housing Certificate for campo viejo.  Pl. br., stmt. of material facts at ¶ 17.  Under these

supported allegations, the Court finds that Plaintiffs have met their prima facie burden of

showing that the difference in treatment vis-a-vis different housing was motivated by

discrimination.

As with the unequal pay claim, Defendant has likewise failed to offer a legitimate, non-

discriminatory reason for the difference in treatment.  He simply offers that the housing was

sufficient and that H2A workers lived in both camps.  Def. reply br. at 7.  In other words, he

offers that no difference in treatment existed.  Since at least a genuine issue of material fact exists

on the issue of difference in housing, Defendant is not entitled to summary judgment as to

Plaintiffs' LAD claim regarding unequal housing.

Therefore, Defendant's Motion is denied as to the unequal housing claim under the LAD.

### 3.    Intent

Defendant's alternative argument for summary judgment on the LAD claims is that even

if discrimination is shown, he cannot be liable because no evidence exists that he intentionally

16

discriminated against Plaintiffs.  Def. reply br. at 6-7.  However, the Supreme Court of New

Jersey has conclusively stated that "[t]he LAD is not a fault- or intent-based statute.  A plaintiff

need not show that the employer intentionally discrimination or harassed her, or intended to

create a hostile work environment.  The purpose of the LAD is to eradicate discrimination,

whether intentional or unintentional."  Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 454 (N.J.

1993).  Thus, Defendant's argument regarding a lack of intent is irrelevant to Plaintiffs' LAD

claims.

Therefore, Defendant's Motion cannot be granted for lack of intent evidence.

**D.     AWPA**

In the second count of the Complaint, Plaintiffs seek relief for six different violations of

the AWPA: (1) 29 U.S.C. § 1821(a); (2) § 1821(f); (3) § 1822(a); (4) § 1822(c); (5) § 1823(a);

and (6) § 1823(b).  Compl. at ¶¶ 49-54.  Defendant argues that he is entitled to summary

judgment as to all six claims because Plaintiffs cannot support any of them.  See Def. br. at 16-

18.  Defendant also argues that he cannot be liable for any AWPA violation because no evidence

of his intentional conduct exists.  See Def. reply br. at 7.  In turn, Plaintiffs argue that they are

entitled to summary judgment themselves on four of the six claims: (1) failure to provide written

disclosures, § 1821(a); (2) failure to pay wages when due, § 1822(a); (3) failure to provide code-

compliant housing, § 1823(a); and (4) failure to provide certified housing, § 1823(b).  Pl. br. at

25-36. The Court denies Defendant's Motion and grants in part and denies in part Plaintiffs'

Motion.

**1.     Written Disclosures–§ 1821(a)**

Under 29 U.S.C. § 1821(a), an agricultural employer that "recruits" any migrant

agricultural work is required to disclose in writing certain details of the employment.  Those

details are not relevant here as it is undisputed that Defendant did not supply any written

disclosure to the Plaintiffs.  Instead, the relevant inquiry here is whether Defendant *recruited*

Plaintiffs to work at Larchmont Farms.

The term "recruits" is not defined in the AWPA.  To give the term meaning, the Court

must look to the purpose of the AWPA and the recruitment provision in particular.  As a policy

matter, the AWPA is a remedial statute that must be construed broadly.  See Charles v. Burton,

169 F.3d 1322, 1334 (11th Cir. 1999).  The purpose of the recruitment provision in particular is

"to ensure that workers to the greatest possible extent have full information about where they are

going and what the conditions will be when they arrive, before they begin the journey."  Vega v.

Nourse Farms, Inc., 62 F. Supp. 2d 334, 346 (D. Mass. 1999) (quoting H.R. Rep. No. 97-885, at

14, reprinted in 1982 U.S.C.C.A.N. 4547, 4560).

Within this framework, other courts to review the term have generally reached two

similar, but different, definitions.  For example, some courts have determined that the term

means "to hire or otherwise obtain or secure the services of" and to include "all pre-employment

discussions that relate to a worker's employment."  See Contreras v. Mt. Adams Orchard Corp.,

744 F. Supp. 1007, 1007 (E.D. Wash. 1990); Castillo v. Case Farms of Ohio, Inc., 96 F. Supp.2d

578, 599 (W.D. Tex. 1999) (citing Contreras).  Alternatively, other courts have limited the

definition to not include hiring, but to include scenarios "in which migrant workers might be

solicited to enter into an employment relationship without the ability to observe the conditions of

the employment."  See Sanchez v. Overmyer, 845 F. Supp. 1183, 1189 (N.D. Ohio 1993)

(rejecting Contreras in part); see also Elizondo v. Podgorniak, 70 F. Supp. 2d 758, 776–77 (E.D.

18

Mich. 1999) (holding recruit "is not synonymous with 'hire' or 'employ'" and involves activities before traveling to work site); Avila v. A. Sam & Sons, 856 F. Supp. 763, 772 (W.D.N.Y. 1994) (holding recruitment involves more than "mere hiring" and involves activities before arriving for hire), aff'd, 60 F.3d 812 (2d Cir. 1995).  The Court is persuaded that the term does not include hiring and holds that "recruits" means all pre-employment discussions relating to the employment and for the purposes of obtaining or otherwise securing the services of a migrant agricultural worker, which occur where the worker cannot readily observe the conditions of the employment.

Within this definition, the Court is persuaded that "recruits" involves activities by third parties for the benefit of the employer.  This means that an employer can engage in "indirect recruitment" by word-of-mouth through other workers.  See Castillo, 96 F. Supp. 2d at 600 (citing Flores v. Rios, 36 F.3d 507, 514-15 (6th Cir. 1994)); Rodriguez v. Jackson, No. 85-2492, 1988 WL 150697, at *1 (D. Ariz. Nov. 9, 1988) ("The definition of 'recruit' should be broad enough to encompass indirect recruitment.  It is reasonable to expect that when a farm spreads the word that work is available other workers not directly contacted will hear of the work and approach the farm."); Escobar v. Baker, 814 F. Supp. 1491, 1502 (W.D. Wash. 1993) (citing Rodriguez).  This also means that when an employer accepts the benefits of recruitment by others, the employer faces liability under § 1821(a).  See Castillo, 96 F. Supp. 2d at 600 (holding employer liable for recruitment by common law agent); Escobar, 814 F. Supp. at 1503 (holding employer liable in part because she "accepted the benefit of [third party's] recruiting efforts by hiring the workers he found"); Leach v. Johnston, 812 F. Supp. 1198, 1210 (M.D. Fla. 1992) (holding it would be "inequitable" to permit defendant-employer to benefit from recruitment by

19

co-defendant without bearing liability).  But see Elizondo, 70 F. Supp. 2d at 776 (holding

employer did not recruit workers where they only sought employment after hearing about

defendants' operation by a stranger at a store).

 In this case, not only must Defendant's Motion be denied, but summary judgment is in

fact appropriate for Plaintiffs.  Defendant maintains that neither he nor Larchmont Farms

engaged in any recruiting in Puerto Rico.  Def. br. at 18; Def. reply br. at 3.  He instead suggests

that Plaintiffs learned of the employment by approaching Mr. Cardona and that Plaintiffs

received additional information from Edwin and Victor Valentin.  Def. br. at 18.  He adds that no

evidence exists that any of these men were "agents" of Larchmont Farms.  Def. reply br. at 3.

But importantly, Defendant also concedes that Edwin Valentin would provide a list of neighbors

who wanted to work at the farm, and then Defendant or Thomas Dunn would send plane tickets.

Def. reply br. at 18.  It is undisputed that Larchmont Farms provided Plaintiffs with their plane

tickets to New Jersey in this case.  Pl. br., stmt. of material facts at ¶14.

 Plaintiffs suggest that this payment of the transportation costs alone suggests that

Defendant engaged in conduct that Plaintiffs reasonably could have interpreted as demonstrating

his consent to Mr. Cardona's agency.  See Pl. reply br. at 29.  In other words, because Mr.

Cardona discussed employment at Larchmont Farms with Plaintiffs, and then thereafter they

were provided with transportation to the farm, he recruited for Defendant.  The Court is

persuaded by this reasoning.  Defendant clearly accepted the benefit of whatever discussions

occurred between Mr. Cardona and Plaintiffs.  These discussions, even if prompted by Plaintiffs'

own initial inquiry, were a pre-employment discussion regarding the terms of the employment.

They occurred where Plaintiffs could not readily observe the conditions of the employment and

they did in fact secure Plaintiffs' services as migrant agricultural workers.  Defendant accepted

the benefit of this recruitment knowing the circumstances under which it occurred, yet he

indisputably did not provide the required disclosures.  Thus, not only is he not entitled to

summary judgment, but also summary judgment is appropriate for Plaintiffs.

Therefore, Defendant's Motion is denied as to the claim for failure to provide written

disclosures under § 1821(a) and Plaintiffs' Motion is granted.

### 2.      False and Misleading Information–§ 1821(f)

Under 29 U.S.C. § 1821(f) an agricultural employer is liable for knowingly providing

false or misleading information to a migrant agricultural worker concerning the terms,

conditions, or existence of employment as required by, *inter alia*, section (a) of § 1821.  Section

1821(f) requires a "knowing" dissemination of false or misleading information, thus a plaintiff

seeking relief under this section must show that the defendant "or its agents" had actual

knowledge of the misleading nature or falsity of the promises made.  Castillo, 96 F. Supp. 2d at

605.  Defendant's argument for summary judgment under § 1821(f) is effectively that any false

or misleading information was given by Mr. Cardona and thus Defendant cannot be personally

liable.  See Def. br. at 18.  However, this argument misses the mark.

An employer can be liable under § 1821(f) for the misleading statements of its agents.

Castillo, 96 F. Supp. 2d at 605.  Here Plaintiffs have alleged that they believed Mr. Cardona was

acting as an agent for Defendant and that Mr. Cardona made misrepresentations about the

amount of pay they would make.  Pl. br. at 29-30.  Defendant attempts to meet his burden under

Rule 56 by baldly stating that no evidence exists that Mr. Cardona was an agent of his and that

Mr. Cardona's statements regarding Plaintiffs' earning opportunity were in fact true: they did

earn more in New Jersey than they would have had they stayed in Puerto Rico.  Def. reply br. at 8.  While the Court is not entirely convinced that this actually meets Defendant's burden under Rule 56, it is of no import since Plaintiffs have adequately shown that a genuine issue of material fact exists for trial.  First, Defendant acknowledges that Mr. Cardona told Plaintiffs that they could make more in New Jersey than in Puerto Rico.  See Def. br. at 8, ¶ 41.  A reasonable factfinder could find this statement misleading, since it seems to imply a large earning opportunity.  Second, the record contains evidence that Defendant paid for Plaintiffs' plane tickets to New Jersey after Mr. Cardona's conversation with them.  Pl. br., stmt. of material facts at ¶14.  From this fact, a reasonable factfinder could determine that Mr. Cardona was acting as Defendant's agent.  See Estate of Cordero ex. rel. Cordero v. Christ Hosp., 958 A.2d 101, 104-105 (N.J. Super. Ct. App. Div. 2008) (discussing "apparent authority").  On the basis of this evidence, the Court is persuaded that a genuine issue of material fact exists for determination at trial.

Therefore, Defendant's Motion is denied as to the claim of providing false or misleading information.

### 3.    Wages–§ 1822(a)

Under 29 U.S.C. § 1822(a), an agricultural employer "shall pay" wages to a migrant agricultural worker when due.  Defendant argues that he is entitled to summary judgment for this claim because he mailed to Plaintiffs their final checks after they did not pick them up.  Def. br. at 16.  Plaintiffs offer that they are entitled to summary judgment because Defendant did not pay them their final checks and they never received them in the mail, and Defendant indisputably never paid them for transportation costs.  The dispute as to § 1822(a) is the same dispute as

discussed above regarding minimum wage under the FLSA.

Therefore, for the reasons expressed above in sections III.B.1-B.2, the Court denies Defendant's Motion as to Plaintiffs' § 1822(a) claim for unpaid wages and the Court grants Plaintiffs' Motion as to the claim for unpaid transportation costs, but denies the Motion as to the unpaid final check.[8]

### 4.   Terms of Working Arrangement–§ 1822(c)

Under 29 U.S.C. § 1822(c), an agricultural employer may not violate the terms of the "working arrangement" with the migrant agricultural worker.  The term "working arrangement" includes "those aspects of the working relationship that are required by law."  Elizondo v. Podgorniak, 100 F. Supp. 2d 459, 463 (E.D. Mich. 2000); see also Cruz v. Gill Corn Farms, Inc., No. 03-1133, 2005 WL 5419057, at *7 (N.D.N.Y. Apr. 13, 2005) (assuming for summary judgment motion that federal and state employment laws were part of working arrangement). Plaintiffs allege that Defendant violated the working arrangement by failing to provide cool drinking water, see 29 C.F.R. § 1928.110(c)(1); N.J.S.A. § 34:9A-38; toilet and hand-washing facilities, see 29 C.F.R. § 1928.110(c)(2); N.J.S.A. § 34:9A-38; and information about pesticides being used at the farm, see 40 C.F.R. §§ 170.120, 170.122, 170.135; N.J.A.C. §§ 7:30-12.5, 7:30-12.6, 7:30-12.9.  Pl. br. at 32-33.

Defendant attempts to satisfy his burden under Rule 56 by simply stating that Plaintiffs' allegations are untrue and he did provide the required arrangements.  See Def. br. at 17.

---

[8] While the Court was not directed to any authority that holds that an employer's failure to pay transportation costs is a violation of the AWPA in the same manner as it is a violation of the FLSA, the Court is convinced that such a failure is a violation of § 1822(a).  See Sanchez v. Overmyer, 845 F. Supp. 1178, 1182 (N.D. Ohio 1993) (holding employer's failure to pay share of FICA taxes is actionable under § 1822(a)).

Defendant's effort, however, is insufficient under Rule 56 to show that he is entitled to summary judgment.  He has not shown conclusively that no violations occurred and he has not pointed out how Plaintiffs' cannot support their allegations.  See Celotex, 477 U.S. at 325.  His bald assertion that he is right and they are wrong ignores his obligation to show that no genuine issue exists.  Even if he had met his burden, Plaintiffs have put forth sufficient admissible evidence to create a genuine issue.  See Pl. br., counter stmt. of material facts at ¶¶ 46, 48, 62, 63, 65.

Therefore, Defendant's Motion is denied as to the violation of the working arrangement claim.

### 5.        Code Compliant Housing–§ 1823(a)

Under 29 U.S.C. § 1823(a), a person who owns a facility or real property used for housing migrant agricultural workers must ensure that the facility or real property complies with substantive federal and state safety and health standards.  Defendant argues that he is entitled to summary judgment on Plaintiffs' claim for violation of § 1823(a) because the housing had passed inspections and was certified and because Plaintiffs testified that it had the requisite amenities (e.g., shower, toilet, stove, etc.).  Def. br. at 17.  Plaintiffs argue that they are entitled to summary judgment themselves because the record contains undisputed evidence that the housing did not meet state and federal standards.  Pl. br. at 34-35.  The Court disagrees with both parties and finds that a genuine issue of material fact exists as to whether Defendant provided adequate housing under § 1823(a).

Defendant's most compelling evidence is documents from the New Jersey Department of Labor certifying that the housing met applicable standards.  See Def. br., Exs. M, N, O, P.  However, this evidence merely shows that at some point the housing was certified by New

24

Jersey, not that it was adequate as a matter of law.  Plaintiffs point to a litany of deposition and interrogatory evidence that supports at least a disputed claim for a violation.  See Pl. br., stmt. of material facts at ¶ 17.  However, Plaintiffs' evidence is by no means undisputed nor does it compel judgment as a matter of law.  Cf. Def. reply br. at 5.

Therefore, the Court denies Defendant's and Plaintiffs' Motions as to the code-compliant housing claim.

### 6.        Certified Housing–§ 1823(b)

Under 29 U.S.C. § 1823(b)(1), no facility or real property may be occupied by migrant agricultural workers until it has been certified, with some exceptions not relevant here.  The owner of the facility or real property must keep the certificate of occupancy posted on site.  29 U.S.C. § 1823(b)(1).  Defendant argues that he is entitled to summary judgment on the certified housing claim because the housing passed inspection and was certified.  Def. br. at 17.  Plaintiffs argue that they are entitled to summary judgment because the certificate of occupancy was not issued for Plaintiffs' housing until after they had moved out and no evidence exists that the certificate was posted.  Pl. br. at 36.  The Court agrees with Plaintiffs and finds that they are entitled to summary judgment.

It is undisputed that Plaintiffs' housing was not actually certified until July 29, 2004, after both Plaintiffs had left Larchmont Farms.  See Def. reply br. at 5 ("The Bridgeton Camp of which Plaintiffs complain was inspected on June 15, 2004, but a certificate did not issue until July 29, 2004.").  This means that the housing was not certified for occupancy while Plaintiffs lived there, notwithstanding that it had been inspected.  Defendant argues that he is not responsible for the government's delay, Def. reply br. at 5; however, the law is clear that workers

25

may not live in uncertified housing until the certificate of occupancy issues, regardless of whether the process of certification is underway.  See Sanchez v. Overmyer, 845 F. Supp. 1183, 1191 (N.D. Ohio 1993); Escobar v. Baker, 814 F. Supp. 1491, 1505-06 (W.D. Wash. 1993).

Therefore, the Court denies Defendant's Motion as to the certified housing claim and Plaintiffs' Motion is granted.

### 7.     Intent–29 U.S.C. § 1854

Defendant's last gasp defense against liability under the AWPA is that the record is devoid of any evidence that he intentionally violated the AWPA.  Def. reply br. at 7. Defendant's argument is not supported and thus is not grounds for granting summary judgment.

Under 29 U.S.C. § 1854(c)(1), migrant agricultural workers can recover damages for intentional violations of the AWPA.  Intent under the AWPA is not an intent to violate the statute, but rather intent to act.  Avila v. A. Sam & Sons, 856 F. Supp. 763, 774 (W.D.N.Y. 1994) (citing Rivera v. Adams Packing Ass'n, Inc., 707 F.2d 1278, 1283 (11th Cir. 1983); Campbell v. Miller, 836 F. Supp. 827, 830 (M.D. Fla. 1993)).  This means that the focus is not on the defendant's knowledge of the statute, but the deliberateness of his actions.  See Sanchez, 845 F. Supp. at 1192 (citing Bueno v. Mattner, 829 F.2d 1380, 1386 (6th Cir. 1987)).

Here, Defendant argues that no evidence of intentional conduct exists in the record.  Def. reply br. at 7.  However, Defendant does not support his conclusory statement with any citations to the record showing something less than deliberate action, nor does he show that Plaintiffs could not meet their burden at trial.  His bald unsupported defense is insufficient to prevail on summary judgment.  See Celotex, 477 U.S. at 325.  Notwithstanding, the Court is convinced that a genuine issue of material fact exists as to whether Defendant's alleged violations were

deliberate.  See Pl. reply br. at 26-28 (citing evidence in the record of potentially deliberate actions).

Therefore, the Court denies Defendant's Motion as to the lack of intent defense.

### E.    Damages to Cesar Galvan Montalvo

Defendant next argues that he is entitled to summary judgment as to the intentional tort claim by Plaintiff Cesar Galvan Montalvo because Cesar suffered no damages from the alleged exposure to pesticides.  Def. br. at 18-19.  Defendant alleges that Cesar testified that any symptoms from exposure went away the same day when he washed his face at camp.  Def. br. at 18-19.  Defendant's argument misses the mark.

Under New Jersey law, a plaintiff need not sustain compensatory damage to maintain a cause of action for an intentional tort when there has been some loss or injury.  Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1229 (N.J. 1984).  Indeed, where the intentional tort is assault or battery, a Plaintiff can recover nominal or punitive damages.  Kelly v. County of Monmouth, 883 A.2d 411, 419 (N.J. Super. Ct. App. Div. 2005).  Plaintiff Cesar Galvan Montalvo testified that he had burning lips, itchy eyes, and a rash from exposure to pesticides.  Def. br., Ex. F at 55:1-4.  Thus, he can state a claim under New Jersey law.

Therefore, the Court denies Defendant's Motion as to lack of damages.

### F.    Intentional Tort Claim

Finally, Defendant asserts that he is entitled to summary judgment on the intentional tort claim under count one because the record does not contain any evidence that he intentionally exposed Plaintiffs to pesticides, or indeed, that they were exposed to pesticides at all.  See Def. br. at 19-20.  Plaintiffs point to several instances in the record that supports both that Defendant

27

intended to expose Plaintiffs to pesticides and that they were indeed so exposed.  See Pl. br. at 18-22.  The Court finds that genuine issues of material fact exist as to whether Defendant intentionally exposed Plaintiffs to pesticides on July 7, 2004.

Intent means that the actor "'desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'"  See Rivard v. American Home Prods. Inc., 917 A.2d 286, 297 (N.J. Super. Ct. App. Div. 2007) (quoting Restatement (Second) of Torts § 8A (1965)).  Defendant seems to assume that even if Plaintiffs were exposed to pesticides, he cannot be liable because no evidence exists showing that he contemporaneously exposed them to harm.  This misses the mark.

Plaintiffs have alleged and supported that Defendant controlled spraying of the fields (when and where) and controlled when and where Plaintiffs would work.  See Pl. br., stmt. of material facts at ¶¶ 1-3.  Plaintiffs also alleged that Edwin Valentin told them that Defendant personally sprayed the field where Plaintiffs worked on July 7th.  See Pl. br., Ex. A at 105:4-5; see also King v. City of Philadelphia, 66 Fed. Appx. 300, 304 (3d Cir. 2003) ("'[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony. . . .'" (quoting Williams v. Borough of West Chester, 891 F.2d 458, 466 n. 12 (3d Cir. 1989))).  These allegations, and other facts in the record, are sufficient to raise a genuine issue of whether Defendant intended to harm Plaintiffs.

Therefore, the Court denies Defendant's Motion as to the intentional tort claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED and

Plaintiffs' Cross-Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.  Plaintiffs' Motion is denied as to the claim under the FLSA for unpaid final wages, for the claim under the AWPA for unpaid final wages (§ 1822(a)), and for the claim under the AWPA for failure to provide code-compliant housing (§1823(a)).  Plaintiffs' Motion is granted as to the claim under the FLSA for unpaid transportation costs, for the claim under the AWPA for failure to provide written disclosures (§ 1821(a)), for the claim under the AWPA for unpaid transportation costs (§ 1822(a)), and for the claim under the AWPA for failure to provide certified housing (§1823(b)).  The Court further grants Plaintiffs' Motion and holds that Defendant is liable under the AWPA and the FLSA for any violation that Defendant Larchmont Farms is liable for.

Dated:    12-3-2009             /s/ Robert B. Kugler
                               ROBERT B. KUGLER
                               United States District Judge