NOT FOR PUBLICATION (Doc. Nos. 121, 123 & 129)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WILSON GALVAN MONTALVO and CESAR GALVAN MONTALVO, | |
| Plaintiffs, | Civil No. 06-2704 (RBK/AMD) |
| v. | **OPINION** |
| LARCHMONT FARMS, INC. and CHARLES WILLIAM HAINES, III, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon two motions for summary judgment filed by Defendants Larchmont Farms, Inc. and Charles William Haines, III (collectively, "Defendants") as well as the cross-motion of Plaintiffs Wilson Galvan Montalvo and Cesar Galvan Montalvo (collectively, "Plaintiffs") for partial summary judgment. For the reasons expressed below, all three motions will be denied.

**I.     BACKGROUND**

This is the second time this matter has come before the Court by way of motion and cross-motion for summary judgment. Because the parties are intimately familiar with the facts, the Court will only briefly articulate those facts necessary to explain its decision. Charles Haines is president and owner of Larchmont Farms, which operates farms in and around Salem and Cumberland Counties in New Jersey. Larchmont Farms is in the business of growing peaches,

1

nectarines, and apples. Plaintiffs, both citizens of the United States and residents of Puerto Rico, have previously worked as agricultural laborers at Larchmont Farms. The allegations at issue in this lawsuit arise out of that employment.

On July 7, 2004, Plaintiff Wilson Galvan Montalvo became ill. Plaintiffs allege that Defendants exposed them to toxic pesticides either by ordering them to work in a field to which pesticides had recently been applied or by spraying pesticides into a field in which Plaintiffs were actually working. Plaintiffs further allege that Defendants did not provide medical assistance to Wilson Galvan Montalvo after he became ill and that Mr. Haines provided Wilson Galvan Montalvo's physicians with incomplete information on potential pesticide exposure that could have allowed his physicians to better treat his ailments. Defendants deny that any pesticides were sprayed at Larchmont Farms on July 7, 2004, suggesting that any pesticide odor present in the fields on July 7, 2004 was carried there by strong winds.

Plaintiffs filed a Complaint on June 15, 2006.[1] After a time, Mr. Haines moved for summary judgment, and Plaintiffs filed a cross-motion for partial summary judgment. On December 3, 2009, the Court denied Mr. Haines's motion for summary judgment, and denied in

---

[1] The Complaint sounds in four counts. The first count, which alleges an intentional exposure to pesticides, is the only count relevant to these motions. The remaining three counts assert violations of (1) the Migrant and Seasonal Agricultural Worker Protection Act, ("AWPA"), 29 U.S.C. § 1801 et seq. for failing to provide written disclosures, providing false and misleading information, failing to pay wages when due, violating the terms of the working arrangement, and failing to provide proper housing; (2) the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201, et seq. for failure to pay minimum wage; and (3) the New Jersey Law Against Discrimination ("LAD"), for offering different terms and conditions of employment to non-immigrant alien workers. (See Compl. ¶¶ 45-55, 56-59, 60-62.)

part and granted in part Plaintiffs' cross-motion.[2] On December 23, 2009, Larchmont Farms moved for summary judgment on count one ("New Jersey Common Law Tort") of the Complaint. On December 31, 2009, Mr. Haines joined in Larchmont Farms' motion. On February 2, 2010, Plaintiffs filed a brief in opposition to Defendants' motions and in support of a summary judgment cross-motion. On February 22, 2010, Larchmont Farms filed a brief in opposition to Plaintiffs' cross-motion. By way of letter, Larchmont Farms filed an informal addendum to its opposition and reply to Plaintiffs' cross-motion on February 25, 2010. On March 1, 2010, Mr. Haines joined in the arguments espoused in the February 25, 2010 letter. On March 8, 2010, Plaintiffs filed a reply brief. The motions are now ripe for disposition.

## II.	LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

---

[2] Plaintiffs' cross-motion was denied as to (1) the FLSA claim for unpaid final wages; (2) the AWPA claim for unpaid final wages; and (3) the AWPA claim for failure to provide code-compliant housing. Plaintiffs' cross-motion was granted as to (1) the FLSA claim for unpaid transportation costs; (2) the AWPA claim for failure to provide written disclosures; (3) the AWPA claim for unpaid transportation costs; and (4) the AWPA claim for failure to provide certified housing. The Court further ordered that Mr. Haines is liable under the AWPA and FLSA for any violation for which Larchmont Farms is liable.

for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 Fed. Appx. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

Summary judgment is inappropriate because key factual matters remain disputed. The Court will first address Defendants' motions for summary judgment and then proceed to discuss Plaintiffs' cross-motion for partial summary judgment.

### A. Defendants' Motions

Defendants move for summary judgment on count one, which contains Plaintiffs' common law tort allegations, on the basis that the alleged conduct is subject to the preclusive force of New Jersey Workers' Compensation Act, N.J. Stat. Ann. § 33:15-1, et seq. ("WCA"). Plaintiffs disagree, arguing that the intentional nature of Defendants alleged conduct puts this suit beyond the reach of the WCA litigation bar. Specifically, Plaintiffs argue that two species of Defendants' conduct – intentionally exposing Plaintiffs to pesticides and aggravating Wilson Galvan Montalvo's injuries by failing to provide medical care to him and pesticide information to his physicians – constitute intentional wrongs. Defendants respond by arguing that Plaintiffs' aggravation allegations should be dismissed because they were never pled, and that even if they were pled, these allegations do not qualify for the statutory exception.

The parties to an employment relationship governed by the WCA agree that compensation for personal injuries sustained by an employee as a result of an "accident arising out of and in the course of the employment" will be made by the employer according to schedules established by law.[3] N.J. Stat. Ann. § 34:15-7. The Workers Compensation system in

---

[3] N.J. Stat. Ann. § 34:15-9 creates a presumption that, absent an express written statement to the contrary, the parties have agreed to be governed by the provisions of the Workers' Compensation Act. Millison v. E.I. du Pont de Nemours & Co., 501 A.2d 505, 509 n.2 (N.J. 1985).

New Jersey represents "an historic 'trade-off'" whereby employees give up most of their rights to common-law remedies in exchange for "prompt and automatic entitlement to benefits for work-related injuries." Laidlow v. Hariton Machinery Co., Inc., 790 A.2d 884, 886 (N.J. 2002) (quoting Millison v. E.I. du Pont de Nemours & Co., 501 A.2d 505 (N.J. 1985)).  Generally speaking, where an employee's injury is compensable by way of the WCA, the employee loses the right to bring an action on account of those injuries at common law.  N.J. Stat. Ann. § 34:15-8.  An exception to this rule exists – and thus an employee retains the right to bring an action at common law – for injuries sustained by way of "intentional wrong."  Id.

To qualify for the "intentional wrong" exception, a plaintiff must satisfy two conditions, referred to by the cases as the "conduct prong" and the "context prong."  Mull v. Zeta Consumer Prods., 823 A.2d 782, 785 (N.J. 2003) (quoting Laidlow, 790 A.2d at 884) (internal quotation marks omitted).  The conduct prong requires the plaintiff to show that the employer acted with knowledge that it was substantially certain that a worker would suffer injury.  Id. (quoting Laidlow, 790 A.2d at 884).  Proving a substantial certainty is a tall order as it requires proof that the plaintiff is virtually certain to be injured.  See Millison, 501 A.2d at 514.  The context prong requires the plaintiff to show that "the resulting injury and the circumstances of its infliction on the worker [are] (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize."  Id. (quoting Laidlow, 790 A.2d at 884); Fisher v. Sears, Roebuck & Co., 833 A.2d 650, 654 (N.J. Super. Ct. App. Div. 2003).  The first inquiry is a question of fact, see Mabee v. Borden, Inc., 720 A.2d 342, 350 (N.J. Super. Ct. App. Div. 1998); whereas, the latter is a question of law, see Tomeo v. Thomas Whitesell Const. Co., 823 A.2d 769, 775 (N.J. 2003).

1.      **Spraying of Pesticides**

Larchmont Farms argue that Plaintiffs cannot demonstrate that Defendants have committed an intentional wrong because, according to Defendants, there is no evidence that Defendants acted with knowledge that its pesticide applications were virtually certain to result in injury to Plaintiffs.  Larchmont Farms takes the position that Plaintiffs cannot show that they were exposed to pesticides on the day in question because Cesar Galvan Montalvo did not see pesticides being applied, Wilson Galvan Montalvo apparently cannot say for sure whether he saw pesticides being applied to the field in which he was working, and that other workers did not see or cannot say whether pesticides were sprayed on the field that day.  Defendants further point to the testimony of Mr. Haines (and the farm's spray records) maintaining that no pesticides at all were sprayed at Larchmont Farms on July 7, 2004.  Defendants also point to Larchmont Farms' practice of never spraying pesticides into a field containing workers, never spraying pesticides in a field adjacent to a field that contains workers, and never spraying within 700 yards of workers.

Albeit in a different context, the Court has already held that the record contains disputed factual issues as to whether Defendants acted intentionally.  See Montalvo v. Larchmont Farms, Inc., No. 06-2704, 2009 WL 4573279, at *15 (D.N.J. Dec. 3, 2009).  These issues remain disputed.  On July 7, 2004, the field smelled strongly of pesticides.  (Wilson Galvan Montalvo's Answers to Interrogatories ¶ 14.)  Wilson Galvan Montalvo certified that pesticides were sprayed very close to him as he was working in the field.  (Id.)  Wilson Galvan Montalvo has further certified that he saw the pesticide-tractor operator wearing protective gear while operating the tractor in the field.  (Id.)  Wilson Galvan Montalvo has testified that Eddie ("Hollywood") Valentin told the workers when they first arrived at the field on July 7, 2004 that he thought that

7

Mr. Haines had sprayed pesticides in that field earlier in the morning and that is why the field smelled like pesticide. (E.g., Dep. of Wilson Galvan Montalvo at 102:7-9.) Wilson Galvan Montalvo further testified that Hollywood told him that Mr. Haines wanted the workers to work in the field despite the pesticide smell. (Wilson Galvan Montalvo's Answers to Interrogatories at 9.) Hollywood testified that he informed Mr. Haines that there was a strong smell of pesticide in the fields and that Mr. Haines essentially told him not to worry about it. (Dep. of Edwin Valentin at 78-79.) Cesar Galvan Montalvo testified that on July 7, ash-like particles – consistent with pesticide use – would fall from the branches of the peach trees when batted. (Dep. of Cesar Galvan Montalvo at 63:15-64:6.)

If believed, this evidence could convince a reasonable fact-finder that Defendants intentionally engaged in conduct that they knew was substantially likely to result in physical injury. As a category, "intentional acts" encompasses more than mere actions taken with subjective intent to harm (such as an assault and battery); it also includes situations where an employer knows that the consequences of its acts are substantially certain to result in harm or injury to an employee. Laidlow, 790 A.2d at 894. By way of contrast, the category does not include mere knowledge and appreciation of a risk, even a strong probability of risk. Tomeo v. Thomas Whitesell Construction Co., 823 A.2d 769, 776-77 (N.J. 2003) (citing Millison, 501 A.2d at 514-15). Such knowledge or appreciation may prove negligence or recklessness, but it does not prove intentional conduct. Id.

Defendants argument to the contrary – that "this is not a situation where Larchmont Farms made a conscious decision to place workers in harms way or to purposely deceive a regulatory body charged with overseeing workplace safety to increase the productivity and/or

8

profit for Larchmont Farms," (Larchmont Farms' Br. in Support of Summary Judgment at 21) – ignores Plaintiffs' evidence that Defendants sprayed the field in which Plaintiffs were working either shortly before and/or while they were working in it. In fact, the intentional conduct alleged by Plaintiffs in this case is demonstrably more intentional than the conduct alleged in the industrial equipment cases cited by Defendants. See, e.g., Laidlow, 790 A.2d at 896 (intentional conduct a jury question where employer removed safety guard on industrial mill despite previous employee complaints); Mull v. Zeta Consumer Prods., 823 A.2d 782, 786 (N.J. 2003) (intentional conduct a jury question where employer disengaged the critical safety device knowing of the dangerous consequences).

An employer who disables a safety mechanism does not commit an intentional wrong per se; rather, that determination requires a case-by-case analysis. See Laidlow, 790 A.2d at 895-96; Fisher, 833 A.2d at 655. In Tomeo, an employer allegedly disabled a safety mechanism on a consumer snow blower. 823 A.2d at 770. The safety mechanism consisted of a hand-operated lever that, when depressed, activated internal propellers. Id. These propellers were designed to both grind and move snow from the ground to the ejection chute. Id. Releasing the hand lever would deactivate the propellers. Id. The plaintiff injured himself when he placed his hand into the ejection chute to address a snow jam at which time his hands came into contact with the moving propellers. Id. The Supreme Court of New Jersey held that the employer's alleged act of taping down the safety device did not constitute an intentional wrong for purposes of the WCA. Id. at 776. The court reasoned that there was no evidence that it was a "virtual certainty" that the employer's alleged recklessness would lead to physical injury. Id. at 775-76.

Tomeo is easily distinguished from the instant case. Plaintiffs allege that the following

9

pesticides were sprayed by Larchmont Farms: (1) Guthion/Azinphosmethyl; (2) Lannate; (3) Captan; (4) Indar; (5) Mycoshield; and (6) Wettable Sulfur.  Plaintiffs have evidence that Guthion may be fatal if inhaled and is harmful if absorbed through skin and that Azinphosmethyl is fatal if swallowed, inhaled, or absorbed through the skin.  (Pls.' Ex. U.)  Plaintiffs have evidence that Lannate is fatal if swallowed, may be fatal if inhaled or absorbed through the eyes, and is harmful if absorbed through the skin.  (Pls.' Ex. V.)  Plaintiffs have evidence that Captan is harmful if swallowed or inhaled and may cause an allergic skin reaction.  (Pls.' Ex. W.)  Plaintiffs have evidence that Indar is harmful if swallowed or absorbed through the skin.  (Pls.' Ex. X.)  Plaintiffs have evidence that Mycoshield is harmful if absorbed through the skin.  (Pls.' Ex. Y.)  Plaintiffs have evidence that Wettable Sulphur is harmful if absorbed through the skin.  (Pls.' Ex. Z.)  Mr. Haines admits that many of these pesticides are harmful and that none should be sprayed on fields in which workers are working.  A jury could certainly find that spraying such substances into a field in which one's employees are (or soon will be) working carries with it a substantial likelihood of harm in a way that causing the propellers on a snow blower to run continuously during operation does not.  For the injury in <u>Tomeo</u> to have been virtually certain to occur, the employer would have had to be able to forecast with virtual certainty that the plaintiff would place his hand into the ejection chute.  By way of contrast, Defendants here are alleged to have known that Plaintiffs and other were working in the very fields Defendants are alleged to have sprayed with these harmful chemical pesticides.

      For similar reasons, Defendants' argument that contact with pesticide is an occupational hazard inherent in agricultural work misses the mark.  As noted, the context inquiry requires a judgment as to whether the circumstances surrounding the injury constitute a mere simple fact of

industrial life or whether the circumstances are plainly beyond anything the Legislature intended the WCA to immunize.  Fisher, 833 A.2d at 654; Millison, 501 A.2d at 516.  In making this judgment, courts have assessed the egregiousness of the alleged employer conduct and queried whether that conduct violated fundamental notions of social contract.  See Laidlow, 790 A.2d at 898; Fisher, 833 A.2d at 655.  The cases tend to gauge egregiousness by looking to factors such as whether the employer engaged in affirmative action, prior regulatory citations, an employer's deliberate deceit, an employer's knowledge of prior accidents, and previous complaints from employees.  See Dimatties v. Echelon Glen Apartments, 2007 WL 1452278, at *4 (N.J. Super. Ct. App. Div. May 18, 2007) (per curiam).

Injuries sustained on account of an employer's knowing exposure of an employee to hazardous chemicals have been held subject to the WCA's bar.  Millison, 501 A.2d at 515-16; Hutchinson v. A.P. Green Indus., Inc., No. 90-5620, 2004 WL 1925512, at *9 (E.D. Pa. Aug. 30, 2004) (mem.).  In Millison, an employer who knowingly exposed employees to pipes surrounded by asbestos, knowing the risk, did not engage in an intentional wrong for the purposes of the WCA.  501 A.2d at 515.  The New Jersey Supreme Court reasoned that the Legislature was cognizant that employees are often subject to occupational risks at work and has addressed those risks by, for example, enactment of the Right to Know Act, N.J. Stat. Ann. § 34:5A-1, et seq., not by enlarging the exception to the WCA bar.  Millison, 501 A.2d at 515.

Consequently, if the allegations in this case were merely that Defendants negligently or recklessly applied pesticides in a way that injured farm workers, Millison would compel a finding that the alleged conduct is not an intentional wrong for purposes of the WCA.  A similar result would obtain if the allegations in this case were that Defendants failed to address an unsafe

11

condition existing on the farm, or failed to inform workers of this unsafe condition. Though regrettable, such exposure is a risk incident to modern agricultural work, and injuries arising out of such risk are compensable only by recourse to the WCA.

The conduct alleged here, however, goes beyond mere negligence or recklessness; although a closer call, the alleged conduct also goes beyond the sort of knowing failure to warn alleged in Millison. In this case, Defendants are accused of an affirmative act, namely the intentional spraying of harmful chemicals into fields in which Defendants knew workers were working. This cuts in favor of finding an intentional wrong. See Dimatties, 2007 WL 1452278, at *4 (affirmative employer actions cut towards finding of intentional wrong); Laidlow, 790 A.2d at 891 (observing that an act of battery, such as "an intentional left jab to the chin," qualifies as an "intentional wrong" even under narrower definitions of the term than that endorsed by New Jersey).

If proven, the conduct alleged here is blatant. This also cuts in favor of a finding of intentional wrong. See Tomeo, 823 A.2d at 775 (observing that deception and blatant disregard for plaintiff's well-being are hallmarks of conduct not contemplated by the WCA). Larchmont Farms has a legal duty to use pesticides in conformity with its labeling. See, e.g., 7 U.S.C. § 136j(2)(G); 40 C.F.R. § 170.9(a). The labels for the pesticides used at Larchmont Farms caution that they are not meant to be applied in such a way as to come into contact with unprotected workers. (E.g., Ex. Z at 4.) Mr. Haines is the ultimate authority for pesticide application and knows that the pesticides are dangerous to the health of his employees if inhaled or absorbed through the skin. For that reason, Larchmont Farms has an established system of pesticide application and worker notification that is designed to avoid exposing workers to pesticides. In

turn, the workers rely on their employer's cautionary signs, maps, oral instructions, and good-faith adherence to same when making the decision to enter and work in a given field. When, as alleged here, pesticides are knowingly sprayed into fields containing unprotected workers, that trust is violated.

As to himself, Mr. Haines argues that he could not have intentionally engaged in the alleged conduct because he was present in the fields batting fruit alongside Plaintiffs and the other workers. This argument is not without some persuasive force as it would certainly seem irrational for an employer to join his workers in conduct virtually certain to result in physical harm. The argument does not carry the day, however, because Mr. Haines's presence in the field with the workers is disputed. Compare (Dep. of Edwin Valentin at 79:2-12) (Mr. Haines batted trees in field with worker for two hours starting around nine or ten in the morning), with (Dep. of Cesar Galvan Montalvo) (Mr. Haines drove to field when Wilson Galvan Montalvo became ill, saw that he was ill, laughed at him, and left).

In sum, although negligent or reckless exposure to pesticides may be a natural risk of farm work, the intentional pesticide spraying of the sort alleged in this case is not. See Laidlow, 790 A.2d at 887 (observing that the exceptions to WCA bar are animated by the idea that exempted conduct "neither constitutes 'a natural risk of' nor 'arises out of' the employment, the very notions at the heart of the Workers' Compensation bargain in the first instance") (citation omitted). The conduct alleged here is highly egregious and violates basic notions of the social contract. See Laidlow v. Hariton Machinery Co., 790 A.2d at 892 (quoting Millison, 501 A.2d at 514 ("[W]illful employer misconduct was not meant to go undeterred.")). For these reasons, the Court concludes that a fact-finder could reasonably find the conduct prong satisfied. Moreover,

the Court finds that, if Plaintiffs prove their version of events, the context prong will also be satisfied.

### 2. Failure to Provide Medical Assistance

Plaintiffs' failure to provide medical assistance allegations can be broken down into two parts, namely (1) Defendants' alleged failure to provide medical attention to Wilson Galvan Montalvo when he sustained his injuries; and (2) Mr. Haines's subsequent failure to provide Wilson Galvan Montalvo's physicians with all of the labels for the pesticides to which Plaintiffs allege they were exposed. As an initial matter, Defendants argue that the Court should dismiss these allegations because they were not pled in the Complaint.

The first count of the Complaint is denominated "New Jersey Common Law Tort." (Complaint at 7.) It alleges that Defendants violated Plaintiffs' common law rights by intentionally exposing Plaintiffs to pesticides. It also incorporates by reference allegations in the preceding "Facts" section. In this section Plaintiffs allege:

> After the Defendants had reason to believe that Plaintiff Wilson Galvan Montalvo had been poisoned or injured due to pesticide exposure while working at Larchmont Farms, Inc., the Defendants failed to make available Plaintiff Wilson Galvan Montalvo prompt transportation from Larchmont Farms to an appropriate emergency medical center.

(Complaint ¶ 34.) This section further states:

> The Defendants failed to provide accurate and complete information to health care providers about the pesticide or pesticides to which Plaintiff Wilson Galvan Montalvo was exposed while working at Larchmont Farms, Inc.

(Id. ¶ 35.) Therefore, Defendants were clearly on notice of Plaintiffs' aggravation allegations notwithstanding Plaintiffs' failure to position these allegations under the subheading corresponding to the common law tort count.

Defendants also contend that summary judgment is appropriate on the merits of these claims for two reasons. First, Defendants insist that no pesticides were sprayed on July 7, 2004 and that Mr. Montalvo was offered assistance, but refused it. Second, Defendants argue that these allegations do not constitute an intentional wrong.

The first of Defendants' arguments is easily disposed of. Plaintiffs claims are built around three basic factual assertions, namely (1) Mr. Haines did not provide medical assistance to Wilson Galvan Montalvo when it was apparent that he needed it; (2) Mr. Haines sprayed the fields with, inter alia, Azinphosmethy/Guthion, Captan, and Mycoshield, but did not provide Wilson Galvan Montalvo's physicians with this information when requested; and (3) Mr. Haines's failure to act aggravated Wilson Galvan Montalvo's injuries. Plaintiffs have evidence to support these allegations. Although Defendants may ultimately convince a fact-finder that their version of the facts is true, summary judgment is not the appropriate vehicle for undertaking such an inquiry.

The second of Defendants' arguments is also unavailing. Intentional wrongs may include fraudulently concealing the fact of an employee's sickness from him, thereby aggravating his condition unnecessarily. See Millison, 501 A.2d at 516 ("An employer's fraudulent concealment of diseases already developed is not one of the risks an employee should have to assume. Such intentionally deceitful action goes beyond the bargain struck by the Compensation Act."). Consequently, a jury could find that Defendants' alleged failure to provide medical assistance to Wilson Galvan Montalvo as well as Defendants' alleged failure to provide Wilson Galvan Montalvo's physicians with antidote and other label information regarding the pesticides to which he was allegedly exposed, constituted an intentional wrong for purposes of the WCA. If

15

Plaintiffs' facts are proved, the context prong will be satisfied. Accordingly, Defendants' motions for summary judgment will be denied.

### B. Plaintiffs' Cross-Motion

Plaintiffs concede that there are a variety of factual disputes in the record. As a consequence, Plaintiffs do not request that the Court grant summary judgment on the entirety of their claims, or even, the entirety of their intentional tort claim. Instead, Plaintiffs ask the Court to hold that Mr. Haines' failure to follow the appropriate restricted entry intervals and his failure to provide medical assistance constitute intentional wrongs for purposes of the WCA as a matter of law. Defendants counter that Plaintiffs' cross-motion is improper as it is more in the way of a requested jury instruction than it is a request for summary judgment.

Federal Rule of Civil Procedure 56 governs motions for summary judgment. That rule provides a mechanism for handling motions for partial summary judgment, or in the parlance of the rule, cases not fully adjudicated on the motion. It provides:

> If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. . . . It should then issue an order specifying what facts . . . are not genuinely at issue. The facts so specified must be treated as established in the action.

Fed. R. Civ. P. 56(d)(1). As the language itself indicates, this rule is designed as a way for the district court to decide issues where no genuine issue of fact remains. See 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (3d ed. 1998) (observing that Rule 56(d) "simply empowers the court to withdraw sham issues from the case and to specify those facts that really cannot be controverted").

In this case, an order establishing undisputed facts would be inappropriate, and Plaintiffs

16

concede as much. As noted, Plaintiffs admit that many facts – such as whether, where, and when Defendants sprayed pesticides, whether Defendants knew Wilson Galvan Montalvo was sick and needed hospitalization, and whether Mr. Haines gave Mr. Montalvo's physicians all of the appropriate pesticide information – remain hotly disputed. Instead, Plaintiffs essentially ask the Court to hold that if Plaintiffs prove their allegations, the intentional wrong exception to the WCA is satisfied as a matter of law. The Court declines this invitation. The intentional wrong inquiry is not particularly conducive to per se rules; rather, a case-by-case analysis is appropriate. See Laidlow, 790 A.2d at 898 (refusing to establish a per se rule that an employer commits an intentional wrong when he or she removes a safety device from equipment); Mabee v. Borden, Inc, 720 A.2d 342, 348-49 (N.J. Super. Ct. App. Div. 1998) (same); see also Mann v. Heil Packer, 2010 WL 98883, at *7 (N.J. Super. Ct. App. Div. 2010) (per curiam).

  Here, the fact-finder will be asked to consider the interplay of a multiplicity of factual allegations in order to determine whether Defendants' acted with substantial certainty that harm to Plaintiffs would ensue. By denying Defendants' motion for summary judgment, the Court has concluded that there is sufficient evidence from which a reasonable fact-finder could make such a factual determination. Plaintiffs have not, however, demonstrated that a fact-finder must necessarily reach such a factual conclusion. In other words, notwithstanding all of Plaintiffs' factual allegations, a fact-finder could still reasonably conclude that Defendants simply did not know with virtual certainty that its alleged pesticide use would harm workers. Accordingly, Plaintiffs' cross-motion for summary judgment will be denied.

**IV.     CONCLUSION**

For the reasons expressed above, Larchmont Farms' motion for summary judgment on count one of the Complaint will be denied.  Mr. Haines's motion for summary judgment on count one of the Complaint will also be denied.  Finally, Plaintiffs' cross-motion for partial summary judgment will be denied.  An appropriate Order shall enter.


Dated: 7-29-2010                                                    /s/ Robert B. Kugler
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge